UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

GARY LEE SMITH,

      Petitioner,

v.                                                            Case No. 5:18cv40-MCR-HTC

B A BLACKMON WARDEN
FCI MARIANNA,[1]

      Respondent.

_____/

REPORT AND RECOMMENDATION

      Petitioner Gary Lee Smith, a prisoner at FCI Marianna, filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging a prison disciplinary action which resulted in the loss of fourteen (14) days gain time credits. ECF Doc. 5 at 2 and 7. The Warden of FCI Marianna responded in opposition (ECF Doc. 12), and Petitioner filed a reply. ECF Doc. 17. The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After careful

---

[1] At the time the petition was filed, Bruce A. Blackmon was the Warden of FCI Marianna. Currently, Shannon Withers is the Warden, and should be substituted in place of Blackmon as the proper Respondent. *See* Fed. R. Civ. P. 25(d). The Clerk is directed to update the case file information to reflect Shannon Withers as the Respondent.

consideration of all issues raised by the parties, the undersigned recommends the petition be **DENIED**.

## I.   BACKGROUND

Smith, who was a commercial photographer, was charged in 2001 with taking sexually explicit photographs of a nude twelve-year-old girl and later distributing the photographs over the Internet and by mail. *United States v. Smith*, 367 F.3d 748, 749 (8th Cir. 2004). Smith was convicted of production of child pornography, interstate transportation of child pornography, and reproduction of child pornography for interstate distribution in violation of 18 U.S.C. §§ 2251(a), 2252(a)(1), and 2252(a)(2). *Id.* Smith is currently serving a 235-month sentence and has a projected release date in December 2019. ECF Doc. 12-1 at 1, 4.

Because he was classified as a sexual offender, Smith was required to participate in a "Sex Offender Management Program" ("SOMP"). ECF Doc. 12-5 at 5. The purpose of the SOMP is to "assist in the effective management of the BOP's population of sexual offenders and to provide services that minimize this population's risk for sexual re-offense." *Id.* Part of the SOMP involves placing inmates, as necessary, on a Correctional Management Plan ("CMP"), which includes "restrictions on mail and telephone communication, visiting privileges, and personal property of sexual offenders, as those areas affect the secure and orderly operations of the institution and the safety of staff, inmates, and the general public." *Id.* at 29.

A CMP is generally initiated by the Warden after an inmate has engaged in risk-relevant behavior. *See id.* at 30. "Risk-relevant behavior" is defined as "Institution behavior related to a sexual offender's history that indicates risk of future sexual offending upon release (e.g., an inmate convicted of child pornography who collects pictures of children; a sex offender who attempts to contact potential child victims)." *Id.* at 2. Modifications and restrictions are specified in an individualized CMP. *Id.* at 30.

In 2008, while at FCI Petersburg, Smith was placed on a CMP after officials discovered he was in possession of "risk-relevant materials"[2], including "approximately 500 pages of handwritten or typewritten sexually focused material, telling the story of an adult male photographer who takes photographs of female models, some of which are underage"; "39 photographs of scantily clothed females appearing to be approximately 15-17 years of age"; and "six … nude photographs of one female appearing to be approximate 15-17 years of age." ECF Doc. 12-4 at 2. From 2008 to July 5, 2011, Smith was identified with possessing, on multiple

---

[2] Defined as:
- Materials that promote the sexual exploitation of children (*e.g.*, written materials that romanticize adult-child sex; literature from pedophile organizations.)
- Written correspondence in which individuals are discussed in a sexualized way.
- Written or pictorial materials that promote violence or reflect a degrading attitude to persons based on gender.
- Any other personal property deemed inappropriate by the SOMP Coordinator due to its association with the inmate's risk to engage in sexually offensive behavior.

ECF Doc. 12-5 at 28-30.

occasions, handwritten graphic accounts of sexual activity, including stories about an adult commercial photographer having sexual encounters with minor female models (ECF Doc. 12-4 at 2-6) and photographs of nude and scantily clad females aged 13-17 (*Id.*); and, also, frequently attempting to order sexually oriented materials such as nude adult magazines, catalogs of young females in underwear or beachwear, and other published work depicting sexual activity. *Id.* He also possessed materials for starting a company based on photographing underage girls and distributing them using a website -- the exact conduct that was involved in his crimes of conviction. *Id.* In August 2012, Smith's CMP was terminated "after demonstration of appropriate conduct." *Id.* at 5. And, even though Smith was identified with risk-related materials on two (2) occasions in 2013, he was not placed in another CMP until the incidents described below. *See id.*

## II.    THE DISCIPLINARY ACTIONS AT ISSUE

On January 22, 2016, during a routine search of Smith's property, Smith was found to be in possession of a business plan for starting websites and businesses dealing in child and adult pornography; pages of graphic sexual content downloaded from LexisNexis (including the description of the gang rapes of three of underage girls); and a screenplay he wrote titled "Murder, Inc.", that featured both violence and explicit sexual acts. ECF 12-4 at 5–6. The discovery of these materials led to the events giving rise to Smith's § 2241 motion.

First, Smith received an incident report for Code 305, Possession of Anything Unauthorized, based on the LexisNexis pages. ECF 12-6. According to BOP Policy, inmates are not permitted to possess sexually explicit writings that pose a threat to the security or good order of the correctional institution. ECF 12-7 at 4. The Warden may determine that sexually explicit material involving children will be excluded for those reasons. ECF 12-7 at 4. For possessing the LexisNexis pages, Smith received sanctions of 30-days' loss of phone and visitation privileges. ECF 12-6 at 2. Second, Smith was placed onto a CMP. ECF 12-4 at 6–7. The CMP detailed various restrictions on Smith's personal property, including a restriction on possessing any type of materials that contain written or pictorial depictions of sex or sexually violent content. ECF 12-4 at 7. The CMP warned Smith that a failure to comply with the restrictions would result in his receipt of an incident report and appropriate sanctions. ECF 12-4 at 7. The CMP was prepared by and reviewed with Smith by SOMP psychologist Jennifer Caperton, and Smith refused to sign it. ECF 12-4 at 8.

Despite the warning contained in the CMP, on or about September 22, 2016, Smith was found with another copy of "Murder, Inc." ECF 12-8 at 3. There is no dispute that "Murder, Inc.," contained sexually violent content – as the "story describes several people being murdered by a gang of people," "while experiencing orgasms." *See* ECF Doc. 12-4, at 6, *see also* ECF Doc. 12-8 at 8-10 (three pages

which clearly contain violent, sadomasochistic and sexually oriented content). Smith received an incident report for Code 306, Refusing a Program Assignment, in accordance with his CMP. ECF 12-8 at 4–18 (setting out the Discipline Hearing Officer (DHO) report for incident number 2898858). The incident report notes that the manuscript had been in his possession previously and that he was found with another copy of it. ECF 12-8 at 3. The incident report was referred to a DHO for a hearing.

At the hearing, Smith had a staff representative and was permitted to present evidence and witnesses. ECF 12-8 at 3. Smith did not present evidence and offered his own statement in which he acknowledged possessing the manuscript and being aware that he was on a CMP. ECF 12-8 at 3. The DHO noted that Smith was caught previously with the manuscript and now was caught with another copy. ECF 12-8 at 3. Based on Smith's admission, the incident report, and the CMP, the DHO upheld the incident report and imposed sanctions of fourteen (14) days loss of good conduct time, thirty (30) days disciplinary segregation, and sixty (60) days loss of email privileges. ECF 12-8 at 3.

## III.   LEGAL ANALYSIS

### A.   <u>First Amendment</u>

In Ground One of his Petition, Smith argues that taking away his good time credit for possession of Murder, Inc., violates his rights under the First Amendment,

28 C.F.R. 551.80, et seq., and FBOP Program Statement 5350.27. ECF Doc. 5 at 3, 7. Smith's First Amendment claim is without merit.

Smith was sanctioned because he was in possession of risk-relevant materials, including a sexually explicit and violent manuscript he authored. BOP regulation 28 CFR § 553.10 *et seq*., states that an inmate may possess property "that does not threaten the safety, security, or good order of the facility or protection of the public." 28 CFR § 553.10. That section further states that "each Warden shall identify in writing that personal property which may be retained by an inmate …." *See id.* Here, those limitations were identified in the SOMP and Smith's individualized CMP. Thus, Smith's First Amendment claim is necessarily premised on the constitutionality of 28 CFR § 553.10 and Respondent's application of the regulation to his disciplinary action.

To determine whether the prison regulation at issue passes constitutional muster, this Court applies a reasonableness standard. *See* <u>Turner v. Safley</u>, 482 U.S. 78 (1987) (applying a reasonableness standard to prison regulation regarding incoming mail); *Thornburgh v. Abbott*, 490 U.S. 401, 414 (1989) (applying reasonableness standard to BOP regulation regarding incoming publications and the Warden's rejection of certain publication containing sexual content). A reasonableness standard asks whether a prison regulation that impinges on inmates' constitutional rights is "reasonably related" to legitimate penological interests.

*Turner*, 482 U.S. at 78.  The reasonableness standard considers the following four factors, (1) whether there is a "valid, rational connection" between the regulation and a legitimate and neutral governmental interest; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, on inmates' liberty, and on the allocation of limited prison resources; and (4) whether the regulation represents an "exaggerated response" to prison concerns.  *See Turner*, 482 U.S. at 78–79.  Applying those factors, here, the Respondent did not violate Smith's First Amendment rights by disciplining him for possessing "Murder, Inc."

First, risk relevant materials, such as Smith's manuscript, are prohibited for a legitimate and neutral governmental interest, namely, to ensure "the secure and orderly operations of the institution and the safety of staff, inmates, and the general public" and minimize the risk of re-offense.  ECF 12-5 at 29.  *See Thornburgh,* 490 U.S. at 416 (recognizing a prison's security interest as a legitimate interest and a regulation granting broad discretion to a warden to reject incoming publications he considers a security risk as "'neutral in the technical sense in which [the Court] meant and used the term in *Turner*").  These institutional concerns are particularly acute in Smith's case, given his repeated non-compliance with the CMP and SOMP. Moreover, the determination that "Murder, Inc." should be confiscated was based

on Smith's individualized CMP and the specific contents of the manuscript, further highlighting the legitimacy and neutrality of the regulation and the Warden's application of the regulation. *See Id.* at 417 ("We agree that it is rational for the Bureau to exclude materials that, although not necessarily "likely" to lead to violence, are determined by the warden to create an intolerable risk of disorder under the conditions of a particular prison at a particular time.").

The second factor also weighs in favor of the Respondent. There are clearly other ways for Smith to exercise his First Amendment rights. Smith's CMP is limited to "writ[ing] ... any materials (letters, books, pictures, brochures, publications, etc.) that contain any type of sexual or sexually violent content (written, picture, animation, etc.)." ECF Doc. 12-4 at 7. Thus, Smith still has the ability to prepare a manuscript and to mail the manuscript, as long as that manuscript does not contain risk-relevant material or otherwise violate the terms and conditions of his CMP. *See id.* at 418 ("[a]s the regulations at issue in the present case permit a broad range of publications to be sent, received, and read, this factor is clearly satisfied"). The third factor is also met because, as stated above, prohibited materials are limited to risk relevant material which could affect "the secure and orderly operations of the institution and the safety of staff, inmates, and the general public." ECF 12-5 at 29; *see Thornbaugh*, 490 U.S. at 418 ("[h]ere, the class of publications to be excluded is limited to those found potentially detrimental to order and security

…[thus], [w]here, as here, the right in question 'can be exercised only at the cost of significantly less liberty and safety for everyone else, guards and other prisoners alike,'" the courts should defer to the "informed discretion of corrections officials." *See Thornbaugh,* 490 U.S. at 418, citing *Turner,* 482 U.S. at 90.  Finally, for the reasons set forth above, the fourth factor is also met as the CMP and the removal of the manuscript from Smith is not an "exaggerated responses."  *See Thornbaugh*, 490 U.S. at 418 ("We agree with the District Court that these regulations, on their face, are not an "exaggerated response" to the problem at hand: no obvious, easy alternative has been established.").   Moreover, Smith has not provided any reasonable alternative "that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests."  *See id.*

Effective management of sexual offenders in prison requires accurate assessment of "risk-relevant behavior" and the implementation of modifications and restrictions in property, mail, correspondence, and visitation to minimize the risk of re-offense. ECF 12-5 at 29.  As described above, Smith continuously demonstrated risk-relevant behaviors, including behavior closely associated with his crime of conviction, which involved production of child pornography and sexual exploitation of underage girls. ECF Doc. 12-4 at 2-6.  Moreover, BOP officials were not unreasonable in concluding that Smith showed a considerable propensity to re-offend and a disregard for the SOMP, as evidenced by his possession of business

plans and shopping lists for starting up a commercial enterprise based on distributing child and adult sexual materials. *Id.* Thus, it was reasonable for prison officials, first, to impose modifications and restrictions on Petitioner in an individualized "Correctional Management Plan" (ECF 12-5 at 29) and, second, to punish him for refusing to follow the CMP by possessing a manuscript replete with images of sexual violence and sadomasochism. ECF 12-8 at 4–18 (setting out the Discipline Hearing Officer (DHO) report for incident number 2898858). *See Owen v. Wille*, 117 F.3d 1235, 1237 (11th Cir. 1997) (affirming district court's conclusion that a detention facility's withholding of "sexually explicit materials" was supported by legitimate penological reasons). Smith's argument that the disciplinary action violated the First Amendment is without merit.

### B.   <u>Violation of the BOP Program Statement and Regulation</u>

Smith also claims that Respondent violated his rights under BOP regulation, 28 C.F.R. § 551.80, *et seq.*, and FBOP Program Statement 5350.27. The regulation and program statement "encourage inmates to use their leisure time for creative writing and to permit the direct mailing of all manuscripts as ordinary correspondence." Program Statement 5350.27, available at the Bureau of Prison's website.[3] The regulation and program statement allow inmates to write and mail manuscripts without prior approval, but do not contain any discussion of the

---

[3] https://www.bop.gov/policy/progstat/5350_027.pdf

regulations and program statements' interaction with other regulations and program statements allowing prison officials to restrict inmate possession of risk-relevant material. *See*, *e.g.*, FBOP Program Statement 5324.10, "Sex Offender Programs" at ECF Doc. 12-5, and FBOP Program Statement P5266.11, "Incoming Publications" at ECF Doc. 12-7.

First, Smith cannot seek habeas relief based on a violation of a Program Statement because such statements are not mandated by statute or the constitution, and therefore, even assuming the Respondent violated Program Statement 5350.27, any such violation is not a violation of federal law. *See Reeb v. Thomas,* 636 F.3d 1224, 1227 (9th Cir. 2011). Program Statements are BOP policies, guidelines or interpretative rules, not substantive law. *Id.* (citing *Jacks v. Crabtree,* 114 F.3d 983, 985 n.1 (9th Cir. 1997); *Reno v. Koray,* 515 U.S. 50, 61 (1995) (characterizing BOP program statements as simply interpretive rules)); *see also United States v. Craveiro,* 907 F.2d 260, 264 (1st Cir. 1990) ("the internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights on any party").

Second, Smith cannot show that the BOP's failure to follow a non-statutory regulation (28 C.F.R. § 551.80, *et seq.*) constitutes a deprivation of liberty without due process because Smith knew the terms of his CMP and further knew that a violation of the CMP would result in an incident report. ECF Doc. 12-4 at 7; *see*

*Mullen–Cofee v. I.N.S.,* 976 F.2d 1375, 1380 (11th Cir. 1992) (alien's challenge to deportation decision, on ground that immigration judge failed to comply with applicable regulations, did not entitle him to relief where alien failed to demonstrate that alleged misconduct resulted in the "substantial prejudice" necessary to prevail in due process challenge to deportation proceeding); *see also, e.g., Sharma v. Drug Enforcement Agency,* No. 11–10963, 2013 WL 791396, at *4 (11th Cir. Mar.4, 2013) (unpublished) (even where a governmental entity fails to follows its own regulations providing for procedural safeguards, it is not a denial of due process if the individual was provided with adequate notice such that his rights were not prejudiced); *Mackey v. Fed. Bureau of Prisons,* 440 F. App'x 373 (5th Cir.2011) (denying habeas relief where petitioner challenged disciplinary decision of BOP but failed to establish that any of the alleged violations of federal regulations and/or BOP policy statements resulted in the required prejudice).

### C.    Double Jeopardy claim

Smith's double jeopardy claim fares no better.  Smith asserts in Ground Two that "Murder, Inc." was confiscated on January 22, 2016, that "[a]n incident report was written", and that "Mr. Smith was deemed guilty and sanctioned."  ECF Doc. 5 at 3.  He then notes that in September 2016, the same officer "wrote **another** incident report based on 'Murder, Inc.'"  *Id.* (emphasis in original).  He argues he was subjected to double jeopardy when he was "deemed guilty, **again**, and sanctioned,

**again**, for the same protected-speech dramatic works [sic], 'Murder, Inc.'" *Id.* at 9 (emphasis in original).[4]

As an initial matter, the Fifth Amendment's Double Jeopardy Clause does not apply here. The Double Jeopardy Clause provides that "[n]o person shall ... be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause consists of three separate constitutional protections. It protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *See North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). It does not prohibit the imposition of all additional sanctions that could, in common parlance, be described as punishment. *See Hudson v. United States*, 522 U.S. 93, 98–99 (1997). In *Hudson*, the Court noted that "[t]he Clause protects only against the imposition of multiple criminal punishments for the same offense occurring in successive proceedings." *Id.* at 99. Only criminal punishment subjects a person to jeopardy within the constitutional meaning. *See U.S. ex rel Marcus v. Hess*, 317 U.S. 537, 548–549 (1943); *Breed v. Jones*, 421 U.S. 519, 528 (1975) ("In the

---

[4] Plaintiff raised the following argument for the first time in his reply: "However, there was never a second seizure made by the Bureau of Prisons – only the January 22, 2018, seizure…and when no additional items, eight months later, could be found in Petitioner's possession, she used the January 22, 2018, seizure to justify writing a **second** incident report." ECF Doc. 17 at 11 (emphasis in original and Petitioner meant 2016, not 2018). This argument is refuted by the record, as the September 22, 2016, incident report clearly describes a second seizure of the document and Petitioner did not object to this at any time prior to the reply. *See* ECF Doc. 12-8. Also, as discussed below, double jeopardy is not implicated even if there was only one seizure.

constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution.").

Numerous courts, including the Eleventh Circuit, have considered whether internal prison disciplinary actions are considered "criminal punishment" such that double jeopardy is implicated and have held that **they are not**. *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (prison disciplinary proceedings are not criminal); *United States v. Mayes*, 158 F.3d 1215, 1219–1225 (11th Cir. 1998) (prison disciplinary sanctions do not constitute punishment for purposes of the double jeopardy clause). Here, Smith's sanctions for his January 22, 2016, incident – loss of phone and visitation privileges – do not rise to the level of punishment. In *United States v. Mayes*, 158 F.3d 1215 (11th Cir. 1998), the court considered whether the following internal disciplinary sanctions rose to the level of criminal sanctions so as to trigger double jeopardy:

> (1) disciplinary transfers to maximum security prisons; (2) disciplinary segregation for 60 days; (3) disallowance of between 41 and 94 days of accrued good conduct time; (4) temporary losses of telephone, commissary, and/or recreational privileges; and (5) losses of visitation privileges for up to one year.

*Id.* at 1217. The court found that they did not, stating:

> we cannot conclude that the regulations authorizing the prison disciplinary sanctions imposed against these appellants are so punitive as to override the government's intent to create remedial administrative penalties for inmate misconduct. Accordingly, we decline to classify the regulations as "criminal," and the appellants' double jeopardy challenge fails.

*Id.* at 1224-25.  Here, the sanctions for the January 22, 2016, and September 22, 2016, incidents are less severe than the sanctions at issue in *Mayes*.  Therefore, the Petitioner's double jeopardy challenge fails just as the appellants' challenge failed in *Mayes*.

Regardless, Smith was not sanctioned twice for the same incident.   In February 2016, Smith lost "30 days of phone and visit restrictions" for possessing pages from LexisNexis which "contained graphic descriptions of sexual crimes" including "multiple rapes committed against girls who were ages 12, 13, and 14." ECF Doc. 12-6 at 1.  Although he was also found to be in possession of "Murder, Inc." and other risk relevant materials, he was not separately sanctioned for those items, and instead was also placed on a CMP.  *See id.*  Then, in September 2016, officers discovered Smith with another copy of "Murder, Inc."  ECF Doc. 12-8 at 3. During the disciplinary hearing, he admitted he possessed the manuscript and that he was subject to a CMP.  *Id.*  The hearing officer thus concluded that he had refused to accept his assignment to the CMP, which banned him from possessing such a work.  *Id.*  The hearing officer, therefore, found Smith violated BOP Code 306, "refusal to accept a program assignment," *id.,* and sanctioned him by disallowing fourteen (14) days of good conduct time, imposing disciplinary segregation for thirty (30) days, and denying email privileges for sixty days.  *Id.*  Clearly, Smith was not twice punished for possession of the same document.

### D.    Claim based on Privacy Act, 5 U.S.C. § 552a(e)(7)

Finally, Smith's Privacy Act claim is inappropriate for a habeas action and also fails on the merits.  Title 5 U.S.C. § 552a(e)(7) provides that "[e]ach agency that maintains a system of records shall -- maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." As an initial matter, to the extent Smith seeks declaratory relief, damages, or other forms of relief besides expedited or immediate release, such relief is unavailable in this action.  *See, e.g., McKinnis v. Mosely*, 693 F.2d 1054, 1057 (11th Cir. 1982) (holding that a claim is not cognizable under habeas when, "[e]ven if [petitioner] prevails on all of his claims and receives all of the relief he demands, the duration of his sentence will not be shortened by one moment").  Although the Privacy Act does provide a cause of action when an agency fails to comply with any provision of the Act, 5 U.S.C. § 552a(g)(1)(D), such action must be a separate (non-habeas) filing subject to the PLRA, filing fee, and other provisions.  *Valle v. Sec'y, Fla. Dep't of Corr.*, 654 F.3d 1266, 1267 (11th Cir. 2011) (citing *Hutcherson v. Riley*, 468 F.3d 750, 754 (11th Cir.2006) (recognizing that § 1983 and § 2254 proceedings are "mutually exclusive" so that if a claim can be properly raised in one of those proceedings it cannot be raised in the other type of proceeding).

Additionally, Smith's claim the BOP is violating his rights under the Privacy Act fails on the merits. The term "law enforcement activity" in the Privacy Act has been interpreted broadly by the courts. *See Maydak v. United States*, 363 F.3d 512, 517 (D.C. Cir. 2004) (BOP's maintenance of photographs of inmates with visitors was pertinent to an authorized law enforcement activity); *Nagel v. U.S. Dep't of Health, Educ. & Welfare*, 725 F.2d 1438, 1441 n.3 (D.C. Cir. 1984) (indicating that the phrase includes an authorized criminal, intelligence, or administrative investigation); *J. Roderick MacArthur Found. & Lindblom v. FBI*, 102 F.3d 600, 603 (D.C. Cir. 1996) (holding that valid law enforcement activities require neither an active investigation nor a "current law enforcement necessity"). Here, the incident reports in question were prepared as part of the BOP's inmate disciplinary process (authorized by 28 C.F.R. §541.1 et seq.), which is clearly central to the BOP's law enforcement mission as it assists in maintaining security and good order within institutions. Thus, there was no Privacy Act violation in the creation and maintenance of the incident reports as they fall within the scope of the BOP's authorized law enforcement activity.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is

issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

1.    The Clerk is directed to update the case file information to reflect Shannon Withers as the Respondent.

Accordingly, it is respectfully RECOMMENDED:

1.      That the amended petition for writ of habeas corpus under 28 U.S.C. §

2241 be DENIED.

2.      That a certificate of appealability be denied.

3.      That the clerk be directed to close the file.

DONE AND ORDERED this 21st day of May 2019.


_/s/ Hope Thai Cannon_____
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**



<u>NOTICE TO THE PARTIES</u>


Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.